IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | Case No. 1:22-CR-138 |
| **Plaintiff,** | |
| -vs- | |
| | **JUDGE PAMELA A. BARKER** |
| **ARINZE OHUCHE,** | |
| **Defendant.** | **MEMORANDUM OPINION & ORDER** |

Currently pending before the Court is Defendant Arinze Ohuche's ("Defendant") Motion to Reopen Detention Proceedings and Grant a Bond filed on August 10, 2022 ("Defendant's Motion"). (Doc. No. 44.) On August 16, 2022, the United States of America filed a Response to Defendant's Motion ("the Government's Response"). (Doc. No. 45.) Although given until August 23, 2022 to do so, Defendant did not file a reply in support of Defendant's Motion. Defendant's Motion is now ripe for a decision.

**Background**

On March 17, 2022, an indictment was returned by a federal grand jury in the Northern District of Ohio, Eastern Division, charging Defendant and his co-defendant with: Conspiracy to Commit Wire Fraud in violation of 18 U.S.C. § 1349 (Count 1); two counts of Wire Fraud in violation of 18 U.S.C. §§ 1343 and 2 (Counts 2 and 3); Aggravated Identity Theft in violation of 18 U.S.C. §§ 1028(a)(1) and 2) (Count 4); and Interstate Transportation of Stolen Motor Vehicle in violation of 18 U.S.C. §§ 2312 and 2 (Count 5). (Doc. No. 15.) The charges relate to thefts that occurred in the Medina, Ohio area, and in late January of 2022, Defendant was initially charged in the Medina County Court of Common Pleas, and posted bond on February 18, 2022. Upon the return of the federal

indictment, the state case was dismissed, and Defendant was arrested on March 23, 2022, at an apartment he and his wife shared in New York City, in the Southern District of New York.

On that same date, Defendant appeared before Magistrate Judge Barbara C. Moses pursuant to Rule 5 and a detention hearing was held. At the hearing the Government moved for detention on the grounds of flight risk, and Judge Moses advised Defendant that "[t]he Government has asked that you be detained without bail" and "is entitled to make that request on the grounds that you heard the Assistant United States Attorney articulate, namely that you present a **serious** risk of flight." (Emphasis added. Doc, Bo. 44-1, PageID #168.) Judge Moses further explained, "[s]o I must now decide whether there is any condition or combination of conditions that will reasonably mitigate **that** risk and reasonably assure your appearance at trial in Ohio and, of course, at all pretrial proceedings and so on." (Emphasis added. *Id.*)

The Government presented the bond documents from Defendant's state charges in Medina County, Ohio, that included the condition of release that Defendant must reside at a verified residence in the State of Ohio. (*Id.*, PageID #s 170; Doc. No. 44-2, PageID # 191.) The Government proffered that it believed that Defendant had no intent to stay in Ohio "because he left on a flight the same day he was released", i.e., February 18, 2022, and remained in New York until he was arrested on the federal charges, never checking in to his supposed residence in Ohio. (Doc. No. 44-1, PageID #s 170-72.) The Government informed Judge Moses that law enforcement reviewed jail calls involving Defendant's wife and his co-defendant Carrington discussing a scheme to make it seem like they will abide by conditions of release by providing a false address so that pretrial services would verify where Defendant purportedly would reside in Ohio. (*Id.*, PageID #s 172-74.) The Government also explained that Defendant was facing potential federal charges in the Western District of Pennsylvania

and the District of New Jersey. (*Id.*, PageID # 174.) Judge Moses declined to rely on charges which had not been filed yet, but acknowledged that "quite a number of charges have been filed"; and the Government went on to explain that "the defendant has the assets to flee and the means to flee," "they are adept at assuming other people's identifies, they have cashed out of other people's accounts," and "that the overall scheme involves stealing people's personal identifying information, using that personal identifying information to purchase cars, and having those cars sent to LA, [where] the defendant had lived" and selling the cars for cash. (*Id.* PageID # 175.) Finally, the Government argued that Defendant does not have any ties to the Northern District of Ohio. (*Id.*, PageID # 176.)

Then counsel for Defendant asserted that Defendant did get a residence in Ohio, which was verified by Pretrial, and it was not a false or fake address; and Defendant maintained the Ohio residence while he was in New York City. (*Id.*, PageID # 179.) However, it is clear from the record, the Defendant did not spend a single day or night in the Ohio residence, and Judge Moses confirmed this. Then counsel for Defendant argued that the language of the bond condition did not preclude Defendant from visiting his family in New York City; and that his bond did not include a house arrest condition or a condition limiting his movement or imposing travel restrictions. Then counsel for Defendant urged Judge Moses to release Defendant on bond, consistent with the recommendation of Pretrial Services, and have three co-signors for the bond, including Defendant's mother and wife, who according to the Pretrial Services Report, claimed to not know of her husband's criminal history, and who the Government represented participated in the jail calls where Defendant discussed the means of fleeing.

3

Other information adduced at the hearing was that the judicial officer in Medina County, Ohio had issued a capias or warrant for Defendant's arrest upon learning that he had left the state of Ohio; but that warrant had been withdrawn, and the state case had been dismissed.

Judge Moses found that the Government had established by a preponderance of the evidence that Defendant is a flight risk, stating in relevant part that "while I certainly understand that there are…hyper technical arguments that could be made as to the meaning off that residence in Ohio phrase in the Ohio State Court bail condition, I think no reasonable person could possibly believe that what it meant was that you could rent an apartment and never live in it and hightail it out of state the very same day that you get out of jail not to be seen again. And, obviously, the Ohio State Court on issuing the warrant also didn't read it to permit those kinds of shenanigans. I also note that the nature of the offense here involving identity theft increases the flight risk, as does the fact that this defendant does not appear to have substantial financial means." Accordingly, Judge Moses ordered Defendant detained. (*Id.*, PageID # 188.)

In Defendant's Motion, Defendant argues that the detention hearing must be reopened because the Government must demonstrate that the case involves a "serious risk" that Defendant will flee, citing 18 U.S.C. § 3142(f)(2)(A). According to Defendant, the Government cannot make that showing, and because Judge Moses did not find him to be a "serious risk of flight" the detention proceedings must be reopened by this Court. Defendant asserts that he is not a serious risk of flight by explaining that Defendant, with the assistance of his wife, rented an apartment in Cleveland for $400 per month on a month-to-month basis, and attaching a copy of a $400 payment to "$scoob119" on February 17 at 12:49 p.m. (Doc. No. 44-3.) According to Defendant, he showed proof of renting this apartment and then was released from Medina County jail. Defendant explains that he did not

4

receive a copy of the lease because he did not have a valid identification in his possession and therefore, the landlord would not let him sign the lease. Defendant asserts that his driver's license had been seized upon his arrest and not returned to him when he was released from jail, and without the driver's license, he could not sign the lease nor work or receive money from his wife. He then notified his bondsman of his desire to travel and maintained contact with him after he traveled to New York to take steps to receive a new identification. Defendant reiterates the argument made to Judge Moses that there was nothing in the bond that precluded him from traveling. Defendant argues that the evidence of the reason for his travel to New York, i.e., to obtain identification, and his notice to his bail bondsman and continued contact with him, are new facts that were not known to Judge Moses at the time of the detention hearing. Defendant also submits four letters of support which the Court has reviewed. (Doc. No. 44-4, PageID #s 193-197.)

In footnote 1 on page 2 of Defendant's Motion, Defendant's counsel notes that he did not attach the Pretrial Services Report because it contains personal information not proper for public viewing, but he represented that he would provide a copy to the Court if requested. (Doc. No. 44, PageID # 152.) Per a non-document order filed on September 7, 2022, the Court requested that the Pretrial Services Report be provided to the Court and it was provided the same day. The Court's review of the Pretrial Services Report demonstrates in relevant part that Defendant was on probation for his conviction in California for "Use ID w/Int DEFRD", presumably an identify fraud conviction and was a fugitive from justice; and Pretrial Services indicated that Defendant poses a risk of nonappearance because of his: Substance Abuse History, Criminal History including Fugitive from Justice, Familial Ties Outside of District; Prior Foreign Travels; Possession of Travel Document, and Outstanding Warrant for Probation Violation. The Court acknowledges that Pretrial Services

recommended that Defendant be released on a bond, secured by cash/property, and cosigned by three financially responsibility persons with specific additional conditions of release enumerated in the Report.

In the Government's Response, the Government argues that Judge Moses did not make a legal error in her findings as alleged by Defendant, noting that throughout the hearing she was evaluating the Government's argument or allegation that Defendant posed a "serious risk of flight", correctly citing to the detention hearing transcript. Further, the Government represents that it reviewed recorded calls from inmates in the Medina County Jail from the timeframe when Defendant was detained there. According to the Government, those calls included one from the homeowner from whom Defendant had purportedly rented a half of a duplex to Defendant "discussing the arrangement she had with the Defendant to tell pretrial services that Defendant was going to live at her home while on bond", she had not received the money from his wife, and if she did not receive the money first, she was going to tell the Medina pretrial services woman who called that she did not know what she was talking about. The Government represents that it confirmed that the inmate on the call with the homeowner was housed in the same areas as the Defendant at the time of the call and cash app payment and "[f]rom listening to the call, it is clear the homeowner was aware that Defendant had no intention of ever residing at her residence."

The Government notes that Defendant did not seek permission from his pretrial services officer to leave Ohio the same day as he was released from jail and travel to New York where he remained until he was arrested on the federal charges. The Government asserts that Defendant's claim that he did not receive a copy of a lease because he did not have valid identification is disingenuous. Finally, the Government provides new information that was not known at the time of

6

the detention hearing: 1.) on June 7, 2022, a federal grand jury in the United States District Court for the Western District of Pennsylvania returned an Indictment against Defendant charging him with two counts of Wire Fraud and one count of Aggravated Identity Theft and Defendant has a federal holder in place for the new charges; and 2.) the luxury apartment in New York City where federal agents arrested Defendant was obtained by Defendant using a false identity and he has failed to make a single payment for it despite living there for several months with his family.

### Law and Analysis

18 U.S.C. § 3145(b) provides:

(b) Review of a detention order.—If a person is ordered detained by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. ***

District courts exercise a *de novo* review of a magistrate judge's release or detention order. *United States v. Fitzhugh*, 2016 WL 4727480 (E.D. Mich Sept. 12, 2016) (citations omitted). "[A] district court should fully reconsider a magistrate's denial of bail and in ruling on a motion for revocation or amendment of a detention order should not simply defer to the judgment of the magistrate but reach its own independent conclusion." *United States v. Leon*, 766 F.2d 77, 80 (2nd Cir.1985).

Title 18 U.S.C. § 3142 "provides the framework for the district court's analysis as to whether release pending trial is proper." *United States v. Williams*, 2020 WL 2529356 (E.D.Tenn. May 18, 2020) (citing *United States v. Webb*, 238 F.3d 426, at *2 (6th Cir. 2000) (table opinion). "The ultimate touchstone of this analysis is 'whether there are conditions of release that will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community.' §

3142(g)." *Id*. Courts must consider the following: (1) the nature and circumstances of the offense charged, including whether it is a crime involving a controlled substance; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, e.g., his or her character, mental and physical condition, family and community ties, financial resources, criminal history, and substance-abuse history; and (4) the nature and seriousness of the danger posed to the community by the defendant's potential release. *Id*.

A detention hearing may be reopened only after a "'judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such. person as required and the safety of any other person and the community.' 18 U.S.C. ¶ 3142(f)." *Id*. Specifically pursuant to 18 U.S.C. § 3142(f)(2)(B), a district court may reopen a detention hearing based on changed circumstances, as Defendant alleges has occurred here, where new information: (1) was unknown to the movant at the time of the detention hearing; and (2) it has "a material bearing on the issue of whether there are conditions of release that will reasonably assure a defendant's appearance at trial and the safety of any other person in the community." *Id*.

As far as whether a hearing is required, while the Bail Reform Act is silent about whether a defendant is entitled to an in-court hearing on an appeal of a detention order, there is ample authority for the conclusion that the Court may decide the motion on the filings (including proffers offered by counsel) as opposed to a hearing. 18 U.S.C. § 3145(b) establishes that "[i]f a person is ordered detained by a magistrate judge" that person "may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." Upon such a motion, the court must make a *de novo* "determination as to whether the magistrate judge's findings are correct based on the

8

court's review of the evidence before the magistrate judge." *United States v. Sidbury*, No. LWF-15-184, 2015 WL 8481874, at *1 (E.D.N.C. Dec. 8, 2015) (citing *United States v. Williams*, 753 F.2d 329, 333-34 (4th Cir. 1985)). The court "may conduct an evidentiary hearing" as part of its review. *United States v. King*, 849 F.2d 485, 490 (11th Cir. 1988). However, "there is no statutory requirement that the court hold a hearing" and the court "retains the discretion to decide whether to hold a hearing." *United States v. Oaks*, 793 F. App'x 744, 747 (10th Cir. 2019). *See also*, *Williams*, 753 F.2d at 331 (recognizing that the court may permit the parties to "introduce proffers of evidence" as an alternative way to allow the introduction of new evidence); *United States v. Hensler*, 18 F.3d 936 (5th Cir. 1994) (holding defendant was not entitled to evidentiary hearing); *King*, 849 F.2d at 490 ("based solely on a careful review of the pleadings and the evidence developed at the magistrate's detention hearing, the district court may determine that the magistrate's factual findings are supported and that the magistrate's legal conclusions are correct.").

The Court rejects Defendant's argument that Judge Moses committed legal error in not finding that Defendant posed a "serious" risk of flight and after a careful review of the record, finds that the information presented at the detention hearing did demonstrate by a preponderance of the evidence that Defendant poses a serious risk of flight. And the Court rejects Defendant's argument that the additional facts he presents have a material bearing on the issues of whether there are conditions of release that will reasonably assure his appearance. Defendant's assertions that his driver's license was seized upon his arrest and not returned to him upon his release and therefore, he did not receive a copy of a lease to the place for which he paid $400 are disingenuous. First, if his driver's license was not returned upon his release, presumably he could have made efforts to have it returned to him. And, if he had no identification, query how he boarded a flight to New York City the same day as his

release from jail.. And, it is not clear why he would have needed a copy of the lease when obviously there was a verbal agreement to rent, and proof of the $400 payment made to rent the apartment Moreover, the fact that Defendant let his bondsman know of his whereabouts is of no moment to this Court; he failed to notify the very person who was responsible for ensuring his compliance with the conditions of his bond issued by the Medina County Court of Common Pleas, i.e., his pretrial services officer. .

Indeed, while the new facts that Defendant presents in support of his Motion do not have a material bearing on whether there are conditions that will reasonably assure his appearance, the fact that he has been indicted by a federal grand jury in the United States District Court for the Western District of Pennsylvania with crimes similar to those he is facing in this Court and a federal holder is now in place for those charges; and the fact that Defendant used a false identity to rent the New York apartment, reinforce Judge Moses' conclusion, and this Court's conclusion that there are no conditions that will reasonably assure Defendant's appearance. Accordingly, Defendant's Motion is DENIED.

**IT IS SO ORDERED.**

Date: September 16, 2022

            *s/Pamela A. Barker*
            PAMELA A. BARKER
            U. S. DISTRICT JUDGE